673 P.2d 506

**Mable BEGAY, Petitioner-Appellant,**

v.

**NEW MEXICO EMPLOYMENT SECURITY DEPARTMENT, Respondent-Appellee.**

**No. 14865.**

Supreme Court of New Mexico.

Dec. 22, 1983.

Joan O'Connell, Shiprock, for petitioner-appellant.

J. Richard Baumgartner, Albuquerque, for respondent-appellee.

OPINION

SOSA, Senior Justice.

This is a dispute on a claim for unemployment benefits. After exhausting administrative remedies within the New Mexico

Employment Security Department (ESD), claimant Mable Begay appealed to the district court of San Juan County. The district court ruled that the claimant was ineligible for unemployment benefits, determining that she had voluntarily terminated her employment for personal reasons and without good cause within the meaning of NMSA 1978, Sections 51–1–1 to 54 (Repl. Pamp.1983) of the Unemployment Compensation Law (Act). Begay appeals. We affirm.

The claimant worked six years as a Navajo interpretor for Presbyterian Medical Services at the Huerfano Health Clinic (Clinic), south of Farmington. Due to a funding cut, her hours were reduced from thirty-six to twenty per week. Begay lived thirty miles from the Clinic, traveling sixty miles per day to and from work. When working full time Begay traveled 300 miles a week. Working the reduced hours she made three round trips per week, totaling 180 miles. At no time was the claimant compensated for mileage. Her hourly wage was $4.05, making her gross weekly wage $81.00 for twenty hours work. Begay terminated her position after two weeks at reduced hours, stating she could not afford to travel the distance after the reduction in hours and pay.

Both parties direct the Court to NMSA 1978, Section 51–1–7 (Repl.Pamp.1983), specifically Subsections (A) and (C). This section, entitled "Disqualification for benefits," provides in relevant part:

An individual shall be disqualified for, and shall not be eligible to receive, benefits:

A. if it is determined by the department that he left his employment voluntarily without good cause in connection with his employment * * *

*     *     *     *     *     *

C. if it is determined by the department that he has failed without good cause * * to accept suitable work when offered him * * *

(1) In determining whether or not any work is suitable for an individual, the department shall consider * * * the dis-

tance of available work from his residence.

Begay contends Section 51–1–7 of the Act should be read as a whole. She asserts the definition of "good cause" within subsection (C) should be applied equally to subsection (A). Reading Section 51–1–7 as a whole, Begay claims she would not be disqualified from receiving benefits as the excessive distance from her residence to work would then be considered good cause for a voluntary termination.

■ The purposes of these two subsections differ. Subsection (C) deals with a claimant already eligible to receive unemployment and seeking new employment. Subsection (A) refers to an employee voluntarily terminating existing employment. These are two distinct and unrelated areas of disqualification. No relationship is apparent between the definition of "good cause" applied to a subsection regulating termination of employment and its use in a subsection regulating acceptance of employment. Under these facts, this Court will not assume the Legislature wanted to define "good cause" in subsection (A) in the same manner it is defined in subsection (C).

Begay asserts her employment termination is causally related to the employment and not personal to her. She advances that "but for" the reduced hours and accompanying reduced pay, she would not have terminated her employment.

■ The record shows the following: Begay had originally been hired for a four and one-half day week; her hours had fluctuated previously; and the claimant had accepted the job knowing the distance from her home to the Clinic. After reviewing the records of the ESD Appeals Tribunal and the ESD Review Board, the district court found the claimant had informed her employer that she would either work full time or she could not work at all; that the claimant was offered work at the Clinic for twenty hours a week at $4.05 per hour; and that the employer did not intend to further reduce her hours. The district court concluded that the claimant voluntarily termi-

tion tion based on good cause. We will not disturb the district court's findings when based on substantial evidence. *See Toltec International, Inc. v. Ruidoso,* 95 N.M. 82, 619 P.2d 186 (1980).

The claimant reminds this Court that historically we have determined the Act should be "liberally construed". *Wilson v. Employment Security Commission,* 74 N.M. 3, 389 P.2d 855 (1963); *Parsons v. Employment Security Commission,* 71 N.M. 405, 379 P.2d 57 (1963); *Graham v. Miera,* 59 N.M. 379, 285 P.2d 493 (1955). When determining her eligibility for compensation, Begay maintains the ESD should have considered the impact of the reduction in hours and salary on her net income in determining whether there was good cause for termination. Begay further contends that, if only her gross wage is considered, she should at least be allowed to reduce the gross wage by the amount of her unusually high transportation costs. ESD considered only her total gross wage in balancing the wages to her eligible unemployment benefit. She refers us to *Parsons,* where we announced "[an] adherence to a rule of liberal construction [of the Act] to accomplish the remedial and humanitarian ends intended by the legislature as stated in the policy declaration in 59–9–2 N.M.S.A. 1953." *Parsons,* 71 N.M. at 409, 379 P.2d at 57 (1963).

This Court addressed the question of voluntary termination of employment without good cause in connection with employment in *LeMon v. Employment Security Commission,* 89 N.M. 549, 555 P.2d 372 (1976). *LeMon* considered termination of employment due to a non work related illness. There we stated

> Clearly, the 'good cause' required by our statute refers to 'in connection with his employment.' The legislature could hard-ly have intended the employer's account to be charged for an employee's voluntary termination for merely personal reasons no matter how 'good.' There must be a causal connection between the employment itself and the termination thereof to trigger the eligibility for benefits.

*Id.* at 551, 555 P.2d at 374.

■ Here we are presented with the question of whether reduced hours and a commute to the job that the worker considers excessive are "personal" reasons, or "good cause" for termination under Section 51–1–7(A) of the Act. These circumstances may appear to the worker to be good cause, but the fact remains that the employer caused neither the distance to be commuted nor its attending expense. Under *LeMon,* the claimant does not fit within the "good cause" requirement in connection with the termination of her employment.

ESD submits the Legislature provided a clear and unambiguous statute. The statute expressly gives ESD regulatory authority to formulate the meaning of "good cause" in Section 51–1–7(A), "if it is determined *by the department* that he left his employment voluntarily without good cause . . ." NMSA 1978, section 51–1–7(A) (Repl. Pamp.1983) (emphasis added). The Act also provides standards for full and partial unemployment. In the present case we are concerned with unemployment of a partial nature, which is defined by Section 51–1–42(I) as a condition that exists:

> in any week of *less than full-time work* if the wages payable to him with respect to such week are *less than his weekly benefit amount.* The secretary shall prescribe regulations applicable to unemployed individuals making such distinction in the procedures as a total unemployment, part-time unemployment, partial unemployment of individuals attached to their regular jobs and other forms of short-time work, *as the secretary deems necessary.*

NMSA 1978, § 51–1–42(I) (Repl.Pamp.1983) (emphasis added).

In dealing with part-time workers the Act at Section 51–1–49(B) provides:

> The *secretary* shall prescribe fair and reasonable general rules applicable to part-time workers, for determining their full-time weekly wage, and the total wages required to qualify such workers for benefits. Such rules shall, with respect to such workers, supercede any inconsistent provisions of the Unemployment Compensation Law, but, so far as practicable, shall secure results reasonably similar to those provided in the analogous provisions of the Act.

NMSA 1978, § 51–1–49(B) (Repl.Pamp. 1983) (emphasis added).

Following the directives of the Legislature, the ESD formulated Regulation 309A, entitled "Benefits For Partial Unemployment." This regulation conforms to the statute by requiring a worker to meet a two prong test prior to being qualified as partially employed: first, his employment must be less than his normal full time hours; and second his wages must fall below his weekly benefit due to the employer having less than full-time work for him. N.M. Employment Security Dept.Reg. 208 § 53 (1979).

Facts brought to light at oral argument indicated that, had Begay's weekly employment been reduced approximately one hour more, she would have at least qualified for the partial payment of benefits to persons who are partially or intermittently employed but fail to earn wages equal to their established weekly unemployment benefit amount pursuant to NMSA 1978 Section 51–1–4(B)(2) (Repl.Pamp.1983). This section gives qualified persons an incentive of twenty percent of their weekly benefit amount for accepting partial employment. The claimant's wages were a mere $6.00 over the maximum amount she was permitted to earn and still retain eligibility for the part-time bonus benefits. These facts were not submitted as points of error on appeal and therefore cannot be considered. *Kimberly, Inc. v. Hays,* 88 N.M. 140, 537 P.2d 1402 (1975), *Grim v. Proctor,* 48 N.M. 433, 152 P.2d 167 (1944).

 It is of course within the prerogative of the Legislature to define good cause for a voluntary termination under Section 51–1–7(A), or to direct the ESD to apply less harsh standards for marginal situations such as the case here.

We can sympathize with claimant's difficulty in commuting lengthy distances while working relatively few hours at marginal pay, but we cannot hold that simply because a worker accepts a job a considerable distance from her home, she is free to terminate employment for "good cause" if her hours are reduced. The ruling of the district court is affirmed.

IT IS SO ORDERED.

FEDERICI and RIORDAN, JJ., concur.